Hear ye, hear ye, hear ye. This Honorable Appellate Court of the 2nd District is back in session. Pursuant to adjournment, the Honorable Captain is not presiding. Thank you. Please be seated. In honor of the second case in the morning, Call 209-257, People's State of Illinois v. Bernard Kosierb on behalf of the Appalachians, Department of the Porto, on behalf of the Appalachians, Scott Jacobs. Good morning, Mr. Porto. Good morning, Honor. You may begin. Thank you, Honor. If you may please the court. Again, my name is Arthur Porto and I represent Bernard Kosierb. Mr. Kosierb was convicted of aggravated fleeing and eluding in DuPage County. That's where this case began. Where this case has evolved to is really a matter of fundamental fairness. We presented three issues in our brief. I believe each issue alone would lead to reversal in this case. However, when considering their totality, I believe that reversal is required in order that justice may be served. The first issue is a violation of Mr. Kosierb's six-amendment confrontation clause rights. The second issue being unreliable and incredible eyewitness testimony. And the third issue being the state's failure to meet their burden to prove the defendant guilty beyond a reasonable doubt. Counsel, with regard to the first issue, what is your response to the position that the argument on the six-amendment confrontation clause was forfeited? Was there an objection, a trial to the testimony of Officer Ryan? Yes, Your Honor. There was an objection. And actually it was, I'll address that in two ways. First of all, there was also an additional argument by the state that we interjected the error, which is also not true. The error occurred on direct examination of Officer Ryan, and there was an objection at that time. And- How did it come up? Were you trial counsel? Yes, I was, Your Honor. And so how did this testimony come up from Officer Ryan that appeared ostensibly to be raised during cross-examination? But how did it come up in your- It came up in that the counsel for the state had asked Officer Ryan a question regarding how they had come to identify Mr. Kocerev as a suspect. And Officer Ryan responded that there had been an earlier incident in May of 08. The incident that Mr. Kocerev was charged with was in June of 08. The officer said there had been an earlier incident in May of 08, which I objected to, and he stated that it involved the same motorcycle. And this is ostensibly how Mr. Kocerev was identified. And then the officer went on to testify about how another officer, Officer Opelt, had obtained a registration from the first incident and so on. How did they know that it was the same motorcycle? That was developed through hearsay testimony, Your Honor. I thought it was based upon the numbers on the license plate. Well, that's what the states would want the trial court to believe. However- I'm sorry. Explain what you just said. No problem, Your Honor. In the first incident, according to testimony of both Officer Ryan and Officer Schlicker, who both testified at the trial, in the first incident, there was an expired registration on the first motorcycle. That was supposedly registered to a bike that Mr. Kocerev had owned four or five years prior, which, by the way, was a different color from either of the bikes in either of these events. However, both officers also testified that in the second incident, there was no license plate and no registration. Then they supported their proposition that it was the same motorcycle. With more hearsay testimony, they presented Officer Dale as an expert in motorcycles. Officer Dale, again, was not presented as a witness at trial, and we weren't given an opportunity to cross-examine him. He supposedly, according to the officers that testified, had watched video, again, video not presented in evidence, showing that they were the same bike. Counselor, in essence, are you raising also sort of a Crawford issue? There is a Crawford issue, Your Honor. Okay. They seem to be overlapping. Crawford, as we know, says that admissions of a witness's out-of-court testimonial statements violates the Confrontation Clause unless the witness was unavailable and is a prior cross. However, for there to be a Crawford violation, the statement must be hearsay. You would agree with that? It is hearsay. What about the well-recognized exception to the hearsay rule that says that the exception allows the admission of statements that explain the progress of a police investigation, so the prior effect knows what caused the focus to be turned to the defendant? How do you get around that argument? This falls within the exception to the hearsay rule. That, Your Honor, my understanding is that, number one, that is fine as far as meeting the standard of probable cause. But, again, the issues, I believe, are unfortunately interwoven at some point beyond meeting burden of beyond a reasonable doubt, meeting probable cause, and then the Crawford issue itself. First of all, Well, that's my question. Is there, why are you saying there's clearly a Crawford violation? Well, I think there is still a Crawford violation because I think this goes beyond just the progress of the investigation because what the propositions that the state wants the trial court, and which the trial court did indeed listen to and believe, is that this is not just the progress of the investigation. This is how the defendant was identified, and it becomes testimonial. This is the defendant. This is the same motorcycle. However, those statements are not being made by anyone that's subject to cross-examination. Those statements are being made by two officers, neither of whom were involved in the first incident, neither of whom has personal knowledge about the registration, a registration, by the way, that was never presented to the defense, and a number was never even given. But why doesn't it go to explain why the police focused on your client, the background? Why doesn't this provide the appropriate background explaining the course of the investigation to the trial effect? Why is that impermissible? If you recognize that there is such an exception, you do recognize there is a legitimate exception, correct? Yes, Your Honor. So why doesn't the activities and the testimony in this case fall within that legitimate exception? Well, I think to some, and that's what I mean, I think at some point it crosses the line. I think to say that there was an initial investigation and this is why the investigation turned to Mr. Colciere, to some extent it's acceptable. However, when testimony continues and it's put forward, the proposition is put forward by the officers testifying that it is Mr. Colciere because this is the registration, this is the same bite. It's not just progress in the investigation. Now we're talking about testimonial statements that are being put forth at trial in order to convict Mr. Colciere. This is not just res gesta, in other words, informing the court of, well, this is the progress of how the investigation went. The res gesta would open up a whole other can of worms, but let me just follow up with this last question on your point. I mean, you've got this argument, but again, I'm trying to find out why you think it went too far. What about the fact that this was a bench trial before a judge, not a jury? Was that entered into the analysis at all? I believe that the judge, a judge needs to follow the law just as a jury does. I don't believe there's there's a differentiation as far as what's presentable hearsay. And is there any argument that the judge is presumed to ignore incompetent evidence? I'm sorry. Is there any document that says the judge is presumed to ignore incompetent evidence? There's a case law that says that a judge is presumed to know the rules of evidence and you have to establish it permanently that he failed to apply the rules of evidence appropriately. That does not apply to juries who are supposed to be laymen, who are not supposed to have expertise. And if the instructions and the evidence are improper, it's not presumed that they know better. And so that's what he's getting at. I understand the argument, Your Honor. Without belaboring a few other things, I don't want to take all your time, but you're saying that this, your opinion is this goes well beyond the explanatory exception to the hearsay rule. In essence, that's what you're saying. Yes, I do, Your Honor. And I think that comes through very clearly in the transcript. And, again, yes, there were some questions developed on cross, but I don't think defense counsel can just stand there and not cross, I mean, the whole point of cross-examination. But we as a court must look at the evidentiary aspect of this before we get into any constitutional issues. Do you understand that? I do understand that, yes. All right. Why don't you move on to a couple other points? No problem, Your Honor. I think the other evidentiary issue is the identification. And I believe the identification was tainted. And, again, this is a case where, going back to the court's point of a judge ignoring evidence that is improper, I think this clearly shows that the court did not. There was no motion to suppress the identification that was ever filed, was there?  No, Your Honor. Then why would the court? Go ahead. Why would the court? You said, sui sponte, the court would move to suppress an in-court identification with no motion pending? No, Your Honor, I'm not saying the court should have suppressed the identification. What I'm saying is the court should have awaited the identification for what it was. And the court did look at it. It's the court who is the judge of the credibility, correct? Yes, I understand that, Your Honor. All right. And used the testimony of the two times the officer had the opportunity to view the face of the defendant and particularly the eyes when the visor was up? That is correct, Your Honor. So what is the problem? In that the opportunity that the officer was given to identify Mr. Kosior was very short. The identification itself was tainted because of the fact that the officer, before the officer showed up to Mr. Kosior's place of work and interviewed Mr. Kosior, he was shown one picture of a suspect, that being Mr. Kosior. He then saw Mr. Kosior at work and said, oh, that is the same person that I saw on the flight. Because it was impossible to be otherwise. Considering the fact that, just going back to, I know I'm not here to try the case again, Your Honor, but going back to the facts of the case, the perpetrator is riding, according to the testimony, 15 to 20 miles an hour. Right. Police officers are trained, however, in identification, are they not? And to follow suspects, even when they're driving or on motorcycles? I mean, we're not talking about a layperson here. Well, that is true, Your Honor, but we're still talking about a human being. And at that speed, and given the fact he was wearing a full helmet, and considering that he identified the defendant based on one attribute. Who did? The officer. Officer Schlicker identified the defendant at trial based on the fact that he had distinctive blue eyes. And I would submit to the court that I had distinctive blue eyes. And if you put a helmet on my client and put a motorcycle helmet on me standing still, you probably wouldn't be able to tell the difference. All right. So your argument is the trial court shouldn't have believed the police officer. The argument is the police officer, even though the police officer testified credibly, the reason he testified so credibly was because it was a tainted identification. Well, again, you tainted. But how was that ever tested? You didn't challenge the identification. Well, you seem to be saying, really. You're doing it on appeal, counsel. You're asking us to rule on a motion to suppress, in essence, are you not? No, Your Honor. What I'm saying is the argument is it was not proven beyond a reasonable doubt. The court, in its own words, said the conviction of Mr. Cotier really comes down to the identification made by the officer. All right. So what you're, in essence, you're not challenging the propriety of the identification. You are challenging the weight to be given to the court's assessment. That's absolutely correct. That's a little different than challenging it. You're saying that for whatever reason in your argument, you perceive the identification because of the brief circumstances to be flawed. That's what you seem to be saying. Not just the brief circumstances. So you're saying it's against the manifest way to the evidence? Is that what you're asking us to look at? The ID wasn't impermissible legally. No, it wasn't. It just didn't have sufficient weight to provide some level of proof beyond a reasonable doubt. It didn't follow procedure according to Illinois criminal procedure code as far as the officers regarding identification. And did you point that out to trial court? Did you say, Judge, you're not following 725? No, I did not, Your Honor. Well, then isn't it obviously authoritative weight? Your Honor, it was an argument made in the motion to reconsider. All right. Well, that's a little dicey, but you don't want to hang your head on that. I understand, Your Honor. Why don't you move on, counsel, to your last point, please? Your Honor, again, this ties, again, with some of the other points. Proof beyond a reasonable doubt. The identification, the court said it weighed the identification more than anything else in deciding Mr. Kroshear's guilt. However, it also mentioned some circumstantial evidence. Circumstantial evidence being where Mr. Kroshear worked, the fact that he was familiar with motorcycles, the fact that he was a mechanic. When you look at the evidence in totality, there was no physical offense by Mr. Kroshear. Did modus operandi ever come up in this case? I'm sorry, Your Honor? Did modus operandi ever come up in this case, i.e., a perpetrator of a series of crimes acting in a similar fashion, i.e., a motorcycle, reckless driving, escape, over 20 miles an hour, black helmet, black jacket, dark motorcycle that was identified by an alleged expert as an Aprilia? I believe that was a safe position, yes. Was the argument ever raised, one way or the other, that this seemed to be a redundancy insofar as the nature and the type of the crime, such that there was a motive to operate or to synchronize the elements of the crime in a similar or identical fashion? In other words, you can have five escaping and eluding or five robberies. Yes, Your Honor. If you remember, there are some burglars who would usually leave something distinctive in a home. And this was a modus operandi, and they were connected by showing some commonality or similarity in elements. And my question to you is, was this ever raised relative to the first or the second incident, other than the type of motorcycle and the registration? Just the fact that the first motorcycle had eluded the police just as the second one did. I think that was the State's extent of that. And, again, he was wearing supposedly the same clothing and it was supposedly the same bike. Has your client ever been prosecuted for the first incident? No, he was not. Has anybody to your knowledge? No. And that was a matter, again, he has to trial. There was no physical evidence. No motorcycle was ever recovered. There was no warrant ever issued, search warrant, for my client's property. And I think the weight of the circumstantial evidence, if anything, tips towards the defense. The client, the defendant is presumed innocent until proven guilty beyond a reasonable doubt. And in this case, the State did not put on any, in my opinion, any admissible evidence. And I think that remains true to this day. Thank you, Counsel. You'll have time on a rebuttal. Thank you. Mr. Jacobson. Good morning, Your Honors. Good morning. Counsel, may it please the Court. I'd like to briefly respond to Justice McClaren's point because I think that really is what opens this case wide open. There was no modus operandi and, you know, argument raised before the trial court. There was no connection between the May 1st earlier incident where a motorcyclist had looted Westmont police officers and the incident that this defendant was arrested for regarding the June 6th eluding of police officers. The two incidents were connected solely on the basis of officers' knowledge that they shared with each other and the belief that they had that they might be related. No one was ever charged for the May 1st incident. No one was ever investigated for the May 1st incident in connection to the June 6th incident. As a result, they're completely separate incidents, ones that have absolutely nothing to do, ultimately, with the outcome of this case that's before this Court. All that officers did was notice on June 6th that they were eluded by a black motorcycle and that on May 1st of 2008, Westmont police officers were also eluded by a black motorcycle. The key difference being that on May 1st, that motorcycle had an expired registration and that expired registration led them to the home of this defendant. But on June 6th, the motorcycle that Officer Ryan was about to stop had no registration on it whatsoever. In fact, the reason that Officer Ryan was about to stop the motorcycle when he was traveling east on Ogden Avenue was because the motorcycle had no registration. Not because he thought that it might be connected to the May 1st incident, but because he, as a police officer, was going to stop a motorcycle that had no registration on it. After Officer Ryan had made the decision to stop that motorcycle, Officer Ryan began to put the pieces together and said, Hey, wait a second. There was a motorcycle that eluded Westmont police officers about a month or so ago. It was a black motorcycle as well. That motorcycle had registration on it. I wonder if the two are related. And when Officer Ryan attempted to effectuate the traffic stop of that motorcycle, the individual driving the motorcycle on June 6th then pulled up on the sidewalk, turned around on Ogden Avenue and led both Officer Ryan and then Sergeant Schlicker on a 100-mile-an-hour chase down Ogden Avenue and ultimately eluded police officers on June 6th. Then the officers backtracked to the May 1st incident, solely based on what occurred on June 6th, and came up with this defendant's name again. To bring it into the trial, obviously there was some testimony that alluded to the earlier incident because that was part of the chain of events that connected the offenses to this defendant. The opposing counsel takes argument with the application of the exception to the hearsay rule that allows an officer to provide a background to explain the progress of the investigation. So tell us why that falls within the exception to the hearsay rule. He says it goes too far. Tell us why it doesn't go too far. It doesn't go too far because it necessarily isn't hearsay, because it isn't testimonial. I mean, all it is is a group of officers in a small police station relating a series of events to each other. It's not testimonial because it was never introduced at trial. I mean, Officer Ryan even testified that the May 1st incident wasn't even part of the police – the May 1st incident and the statements that he received from Officer Ophel and Sergeant Dale, who I believe is the Westmont Police Station's resident motorcycle aficionado, those statements weren't even alluded to in the June 6th police report. And we all know the police report certainly didn't come in as evidence against this defendant. So the statements, by definition, aren't testimonial. They're not out-of-court statements that were being offered for the truth of the matter asserted. They weren't offered for the truth of the matter asserted for that fact. They weren't offered to show that the defendant necessarily was driving a black Apria motorcycle or that the make of the motorcycle was important, or even that the defendant was necessarily the person that had eluded police officers on May 1st. All that they were offered to show was that there's a possibility that the defendant might have had a connection to the May 1st incident, and that's how officers came to identify – they backtracked – using the registration to obtain the defendant's photo from the state database. They showed that photo to Sergeant Schlicker. Sergeant Schlicker used that photo to make the identification. It has nothing to do with whether or not Sergeant Dale, the resident motorcycle aficionado, came up with the idea that this was a black Apria motorcycle, and as counsel contends, that was the sole basis for identification. That simply isn't the case. That's counsel overemphasizing what occurred in the Westmont Police Station. What occurred in the courtroom, what occurred according to Sergeant Schlicker, was that as officers were attempting to effectuate the traffic stop on June 6th, Sergeant Schlicker had two separate abilities to identify the defendant, both when the defendant turned his motorcycle up on Ogden Avenue and was directly in front of Sergeant Schlicker's windshield as Sergeant Schlicker was attempting to block westbound traffic. And then again, as Sergeant Schlicker took off after the defendant, and they were almost right next to each other, Sergeant Schlicker was able to look out his window and see the defendant on his motorcycle with his visor up. And I don't want to suggest that this is necessarily an opportunity for defense counsel to rectify an error that occurred in trial court. To point this court's attention to the two key aspects of the record that control the outcome of this case, on pages 69 and 70 of the record, defense counsel is cross-examining Sergeant Schlicker about what occurred in this case. And defense counsel asks Sergeant Schlicker a series of questions. It's the classic example of Irving Younger's asking one question too many on cross-examination. And defense counsel says to Sergeant Schlicker, if the court will indulge me, I'll just read a few records so I don't misquote it. Defense counsel asks, but okay, so you saw a portion of his face from 9 to 10 feet. Could you see his eye color? Referring to the defendant. Sergeant Schlicker answers, yes, correct, blue. And defense counsel asks, do you have 20-20 sight? Sergeant Schlicker answers, I have 20-20 sight. His eyes are a bright, distinctive blue color. Then the trial court makes its ruling on pages 95 and 96 of the record. The trial court alludes to the fact, the earlier fact, that defense counsel had already stipulated to the fact that there was a chase that had occurred on Ogden Avenue, in particular to the chase, that it was over 21 miles an hour, that it went through several stoplights, that it endangered people's lives. All of those things were already stipulated to by defense counsel. So the only issue really was identification in this case. And as the trial court noted, there was some circumstantial evidence in this case. Where the defendant was, or where the defendant allegedly was at that particular time of the day, on Ogden Avenue at 9 o'clock in the morning, heading towards where officers knew the defendant to work, at the luxury motors over there in Lombard on Ogden Avenue. I'm sorry, on Downers Grove, rather, over on Ogden Avenue. There was the fact that the defendant, in an interview with officers, admitted to owning several motorcycles. All right, so what you seem to be saying, while the strength of the identification, if you will, is really the crux of the case, and I was going to ask you, there's other evidence, albeit circumstantial, to support the strength of the identification. Is that what you're saying? There's some corroborating evidence? I'm saying, Your Honor, not only is there corroborating evidence, but I think, most importantly, what this case really boils down to is the only evidence that really matters, the only evidence that the trial court explicitly thought mattered, was Sergeant Slicker's ability to identify the defendant's distinctive blue eyes when he saw the defendant twice, once at the beginning of his chase, and again during, shall we say, the prelude to the really exciting part of the chase. If the law is well settled, the positive identification of a single credible witness is sufficient to sustain a conviction. I think we know that, but again, you might want to decide if your case, if there's anything else you could point to, now's the time to point to it. Absolutely, Your Honor. What I would point to, then, is I would say, well, while there are those other things that are corroborative, I don't think, really, that the trial court found anything to be more persuasive than that evidence. I think that evidence is certainly strong enough to uphold the conviction. But what I think is the main confusion and misunderstanding that, frankly, underlies the appellant's contentions in this case, is the appellant believes that all of these other things that might be corroborative in this case might detract from Sergeant Slicker's ability to have identified the defendant during the chase. And that simply isn't the case. While there might be other corroborative evidence out there that we could certainly discuss at length if you'd like, none of these things that the defendant is raising on appeal, whether it be the Crawford issue or Sergeant Dale's testimony or all the exciting events that occurred in the May 1st police chase, none of those detract from what actually occurred on the June 6th police chase. None of those impair Sergeant Slicker's ability to identify the defendant's face twice during that second police chase. And none of them, frankly, interfere with Sergeant Ryan's ability to have stopped the motorcycle on June 6th based on the fact that it had no registration at all. So, frankly, I don't see where there is a gap or a break in a series of events that leads to a reasonable arrest and, frankly, a sustainable conviction. So if the court would like to discuss Crawford issues, I'd be more than willing to do that. Or if the court has any questions about the record. I think you've already touched on the Crawford issue, so no. No. Thank you, counsel. Thank you, Your Honor. Okay. Mr. Portal? Mr. Portal, before you get too far into this, and this is really the critical question, you're aware of the standard of review that we are required to follow until it's taken. Yes, Your Honor. And that is that we have to do the evidence in the light most favorable to the State, actually at this point, and determine whether any rational prior effect could have found the elements of the crime beyond a reasonable doubt. So tell us why a rational prior effect could not have found the elements present. In the light most favorable... In the light most favorable... Sort of a hyper, is it? No. I think it is. Well, not for us to meet, Your Honor. I understand the burden is accurate, but I think we can meet it. And because if we take the trial forward, and actually what my opponent said to her, and basically if you heard what he said, basically he said there is no other prior wording evidence. And everything comes down to the identification. Then I understand some of the Justice's opinions that, yes, officers do receive training. However, training does not make people superhuman. And I speak honestly from my own experience. I've received some of the best training in the world as a United States Marine. Identification of someone based on one attribute is not convincing. It is not clear, especially given the fact that the other factors surrounding the identification, not only was it only a one attribute of saying, well, he had brown hair. He had very distinctive brown hair. He had very distinctive blue eyes. We don't even have those two together. We have one. He had very distinctive blue eyes. And given the fact that, again, we're talking about 20 or 30 miles an hour in a police chase, with one vehicle traveling in one direction and another traveling in another, the officer is driving the car. He's probably talking on his radio, coordinating with other officers. I don't think any reasonable person could expect a police officer or any other human being to make an identification that is reliable and credible in that situation. And that's what it comes down to if we're going to hold one witness. If that one eyewitness is going to sustain a conviction, and I don't have to go over with the panel all the studies that have been done about the reliability of eyewitness identification, honestly, the amount of training that ‑‑ there's no amount of training that could convince me that that is a credible identification, honestly. As far as some of the other points that my opponent made, when we go back to the question of Justice McCorrin about modus operandi, honestly, what the state is putting forth is just not what happened at the trial. Officer Ryan, in fact, stated, yes, we did investigate the first incident. Yes, we did send someone out to the house. And I questioned him. I said, who was it? Did you go out? He said, no, it was another officer. When? Is there any record of this? Nothing. But they knew it was the same bike. It's the same bike. That was the propositions that were put forth by their expert, who, by the way, is not an expert because he wasn't vetted as such by the court and he wasn't subject to cross‑examination. And that's what this came down to. And his expert opinion was based on two videos that he saw reportedly, again, not in evidence, that showed it was the same bike. Why would he have to be an expert? I mean, the purpose of which it was offered was not expert testimony. It was offered as a link in the chain of events, wasn't it? No, it was offered as identification. It's not a link in the chain. This is where we have testimonial evidence, Your Honor, and this is where you violate cross‑examination. Testimonial evidence that says what? That says these were the same bikes because our expert says they were the same bikes. And, therefore, it's the same defendant because, you know what, what we did on the first bike, there was a registration, and we traced it to Mr. Cosier. And, look, he has the same distinctive blue eyes in this photograph. If that were true, then what you're saying is that was the factor, and the observations of the police officers the first time or the first incident in May and the observation of the police officers the second time in May and the registration and the identity of the identical motorcycles are probative facts which establish the evidence without the viewpoint of guilt. And they have it both ways. Either the only issue is whether this identification is appropriate, in which case the other things or the other facts aren't probative facts because they basically are foundational and investigatory, or, which we're now arguing is, all these facts that supposedly establish the defendant as guilty are improper because they were used to buttress, corroborate, and establish that from May through June, this individual was driving that identical motorcycle all over the place. Well, may I just address that, Your Honor? Sure. I don't, I don't, I think the problem is I don't know if they're probative, and neither does the court because they were established through hearsay testimony. The identity of the supposed, of my client, the defendant, was established through Officer Opelt and Officer Dell, were never presented as witnesses. So how probative those, those were, I have no idea. One final question. Did the court rely on that? I thought you were saying that the court found the defendant guilty because of the identification and the identification only. Well, but that's what I'm saying. That's what I am saying, Your Honor, is that the court, in establishing the identification, relied on the fact that these two officers who never testified are telling the court it's the same bike. But the court said that in its ruling that it was relying on the officer's testimony, out of court statements. Is that what the court said? Or did it focus on the identification in court? It focused on the identification, but I believe that's a, that's the foundation of the identification, Your Honor, is it's the same bike. This is the syllogism. It's the same bike. From the first bike, we received the registration. Same bike, registration, identification. Therefore, it's the same rider, same defendant. That's the state's theory. Was it the court's finding? There is a difference. The state can argue whatever it wants. What did the court base it on? That's the critical question. Well, that's what I believe the court based it on, Your Honor, is a faulty syllogism that was supported and propped up by hearsay testimony. Okay. Thank you very much. Thank you. At this time, the court will take the matter under advisement and render a decision in due course. Court stands adjourned for the day.